UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRELL JACKSON,<br>　　*Plaintiff*, | :<br>:<br>: |
| v. | : Case No. 3:22-CV-1051 (OAW) |
| WALKER, et al.,<br>　　*Defendants*. | :<br>:<br>: |

### INITIAL REVIEW ORDER

Pro se plaintiff, Terrell Jackson ("Mr. Jackson" or "Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall"), has filed a complaint pursuant to 42 U.S.C. § 1983, against former Warden Walker ("Warden Walker"), Correctional Officer Warren ("Officer Warren"), Correctional Officer Martin ("Officer Martin"), and Captain John Doe ("Captain Doe") (collectively "Defendants"). Plaintiff alleges that Defendants caused him to contract COVID-19 by permitting inmates who had tested positive for the virus to occupy the housing unit, before those inmates were transferred to quarantine. Plaintiff seeks compensatory and punitive damages from each defendant. For the reasons that follow, all claims against Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against Defendants Warden Walker and Captain Doe and all Fifth and Fourteenth Amendment claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Eighth Amendment claim for deliberate indifference to health and safety against Defendants, Officer Warren and Officer Martin, for further development of the record.

1

**I.      STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2).  Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining

whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to pro se litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)).  *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt pro se litigants from the minimum pleading requirements described above: a pro se complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).  Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pleaded.  *Id.*

## II.    BACKGROUND

Mr. Jackson alleges that he was "purposely exposed" to COVID-19 on November

3

25, 2020, at Cheshire Correctional Institution.  Compl. at ¶ 1, ECF No. 1 ("Complaint"). On that day, eleven inmates in the unit tested positive for COVID-19.  *Id.* ¶ 2.  The unit was not immediately locked down or quarantined.  *Id.*

Officer Warren gave bags to all inmates who had tested positive and informed them that they would be moved to another unit in order to be quarantined.  *Id.* ¶ 3.  As soon as Officer Warren finished speaking, Officer Martin opened the cells on one side of the unit for recreation.  *Id.* ¶ 4.  The inmates Officer Martin released included most of those who had tested positive.  *Id.*  Plaintiff saw the inmates who had tested positive using the phone and moving about the unit.  *Id.* ¶ 5.  Thereafter, Plaintiff's side of the unit was released for recreation.  *Id.* ¶ 6.  Mr. Jackson learned that additional inmates who tested positive were released for recreation in Plaintiff's group.  *Id.* ¶ 7.  All inmates who tested positive for COVID-19 were permitted to recreate, prior to being moved to the quarantine unit.  *Id.* ¶ 8.

On November 30, 2020, Plaintiff tested positive for COVID-19.  *Id.* ¶ 9.  Plaintiff and about twenty other inmates were moved to the quarantine unit.  *Id.*  Plaintiff experienced symptoms and after-effects including serious headaches, loss of taste, loss of smell, fever, chills, and loss of breath.  *Id.* ¶ 12.  To date, he has not regained his sense of smell and he alleges that his immune system is compromised.  *Id.*

## III.     DISCUSSION

Mr. Jackson asserts two causes of action.  First, he alleges that Defendants violated his Eighth and Fourteenth Amendment rights through their "malicious and

[]reckless actions by purposely exposing the plaintiff to a deadly virus." *Id.* at ¶ 13. Second, he alleges that Defendants were deliberately indifferent to his health and safety in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments, by not protecting Plaintiff from the COVID-19 virus and causing unsafe conditions of confinement. *Id.* at ¶ 14. The court considers the two causes of action to be restatements of one claim for deliberate indifference to health and safety.

    A. <u>Official Capacity Claims</u>

Plaintiff states that he seeks compensatory damage from each defendant in his individual capacity. Mr. Jackson also seeks punitive damages from each defendant, but does not specify whether he seeks these damages in Defendants' individual or official capacities.

The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor does Plaintiff allege facts suggesting that the state has waived immunity in this case. Thus, as all defendants are state officials, Plaintiff cannot obtain damages from any defendant in his official capacity. To the extent that Plaintiff seeks punitive damages from any defendant in his official capacity, that request is **<u>DISMISSED</u>** pursuant to 28 U.S.C. § 1915A(b)(2).

    B. <u>Fifth and Fourteenth Amendment Claims</u>

Mr. Jackson characterizes his claims as violations of his rights under the Fifth,

5

Eighth, and Fourteenth Amendments.  Records available on the Department of Correction website show that Plaintiff was sentenced on January 8, 1999.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=216238.  Thus, he was a sentenced inmate in November 2020, at the time of the events in question.  Deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, not the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (recognizing that deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while deliberate indifference claims of pretrial detainees are considered under the Fourteenth Amendment).

In addition, the Fifth Amendment Due Process Clause applies to federal, not state, inmates.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009) (stating claims for deliberate indifference to medical needs of a state prisoner or detainee are properly brought under the Fourteenth Amendment's Due Process Clause, as compared to a similar claim brought by a federal prisoner or federal detainee which is properly brought under the Fifth Amendment's Due Process Clause), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).  As Plaintiff is not a federal prisoner, he cannot assert a Fifth Amendment deliberate indifference claim.

All Fifth and Fourteenth Amendment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

C. Eighth Amendment Deliberate Indifference Claim

Plaintiff alleges that Defendants were deliberately indifferent to his health and safety by failing to immediately quarantine inmates who tested positive for COVID-19 and,

6

instead, permitting them to recreate in the housing unit where they could spread the infection to uninfected inmates.

An inmate must meet two requirements in order to state an Eighth Amendment claim against a prison official based on the inmate's conditions of confinement. *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020). First, the inmate must allege that "objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities.'" *Id.* (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001))). Second, the inmate must allege that, "subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Id.* (alteration in original). Plaintiff must allege facts showing that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002). Claims asserting only negligence, however, are not cognizable under section 1983. *See Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

"Conditions of confinement inflict cruel and unusual punishment when they result 'in unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measure of life's necessities.'" *McCray*, 963 F.3d at 117 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). There is no "bright line test" to determine whether a risk of serious harm is objectively "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess

7

whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).  The court considers steps the facility has taken to mitigate the danger when making this determination.  *Id.*

Plaintiff alleges that he contracted COVID-19 in November 2020.  The Second Circuit has recognized that "correctional officials have an affirmative duty to protect inmates from infectious disease."  *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm from COVID-19 if a prison does not take adequate measures to counter the spread of the virus."  *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). Plaintiff alleges that, after inmates who had tested positive for COVID-19 had been given bags to pack their property for transfer to quarantine, but prior to being moved, the infected inmates were permitted to attend recreation in the housing unit with uninfected inmates, including Plaintiff (though Plaintiff does not mention whether the inmates were wearing masks or were taking other precautionary measures intended to minimize the spread of COVID-19 during such recreation).  Mr. Jackson states that he observed the infected inmates touching the phones and other common surfaces to which uninfected inmates would then be exposed upon their release for recreation.  The court considers these allegations sufficient to plausibly allege that Defendants created a substantial risk of harm and to satisfy the first element of the deliberate indifference standard.

1. *Warden Walker and Captain Doe*

Warden Walker and Captain Doe are supervisory officials. To recover damages under section 1983, Plaintiff must demonstrate each Defendant's "personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Personal involvement of a government official is not established "by reason of [the official's] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). To establish the personal involvement of a supervisor, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Plaintiff alleges "[t]he defendant warden [W]alker and the shift commander did not lock down the unit or ma[k]e sure that all the inmates who tested positive on [N]ovember 25, 2020 were moved out of the unit immediately . . . ." Complaint ¶ 11. This is the only mention of the supervisory defendants. Plaintiff alleges that all the events occurred in a very short time period; the cells were opened for recreation as soon as Officer Warren finished his announcement that inmates testing positive would be transferred. Plaintiff alleges no fact suggesting that Defendants (Warden Walker or Captain Doe) ordered the cells opened for recreation, or that they were aware of the test results, or that the cells were opened for recreation before the infected inmates were moved. Thus, Plaintiff has not alleged facts establishing the personal involvement of the supervisory defendants. The claims against Defendants, Warden Walker and Captain Doe, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

2. *Officers Warren and Martin*

Plaintiff alleges that "defendants [W]arren and [M]artin []recklessly let inmates who tested positive for covid-19 have recreation and socialize with me and other prisoners who tested negative for covid-19." Complaint at ¶ 10. The deliberate indifference standard requires that Officers Warren and Martin knew of and disregarded an excessive risk to Plaintiff's health or safety. *McCray*, 963 F.3d at 117. Plaintiff alleges that the inmates were released immediately after Officer Warren told them they had tested positive and were being moved to quarantine. Thus, Officers Warren and Martin were aware of the risk of serious harm these inmates posed to inmates who had tested negative. Despite this knowledge, the COVID-19 positive inmates were released into the unit for recreation. Plaintiff characterizes their actions as reckless. Based on the minimal facts alleged, the court cannot determine whether the actions were negligent, or whether they rose to the level of deliberate indifference. Plaintiff also characterizes the actions as malicious, but alleges no facts supporting the characterization. Accordingly, the case will proceed on the Eighth Amendment claim against Officers Warren and Martin, for further development of the record.

**IV.   ORDERS**

All claims against Defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against Warden Walker and Captain Doe and all Fifth and Fourteenth Amendment claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Eighth Amendment claim for

deliberate indifference to health and safety against Officer Warren and Officer Martin, for further development of the record.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work addresses for Officers Warren and Martin, with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at their confirmed address, within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the United States Marshals Service on the defendant in his individual capacity, and the defendant shall be required to pay the cost of such service.

(2)     T**he Clerk shall** send Plaintiff a copy of this Order.

(3)     Defendants shall file their responses to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(6)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or the Attorney for Defendants of his new address.

(8)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  As Local Court Rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.  In addition, Plaintiff must serve copies of all documents by regular mail on any Defendant who does not participate in electronic filing.

**IT IS SO ORDERED** at Hartford, Connecticut, this 1st day of November, 2022.

                                          /s/
                                Omar A. Williams
                                United States District Judge